# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **SECURITY UNIVERSITY**, |
| Plaintiff, |
| v. |
| **R. ALEXANDER ACOSTA *et al*.**, |
| Defendants. |

Case No. 1:16-cv-01469 (TNM)

## MEMORANDUM OPINION

The resolution of this case depends on the meaning of the word "is." The Plaintiff, Security University (the "University"), which trains information technology and cybersecurity professionals, obtained a grant from the Department of Labor. The Defendants, officials for the Department of Labor and the Department itself (collectively, "DOL"), terminated the grant after the University lost its accreditation. The DOL asserted that to be eligible for the grant, the University must be an institution of higher education that "is accredited" throughout the term of the grant. Because the University lost its accreditation halfway through the grant period, the DOL concluded that the University was no longer eligible and that the grant should be terminated. The University challenges the DOL's position as arbitrary and capricious, arguing that the University only needed to be accredited at the time of the grant award. The University further challenges as arbitrary and capricious the deadline imposed by the DOL for the University to regain accreditation. The parties' cross-motions for summary judgment are now ripe for adjudication. Upon consideration of the pleadings, relevant law, related legal memoranda in opposition and in support, and the entire record, the Court finds that the relevant statutes required the University to maintain its accreditation throughout the term of the grant and

that neither the DOL's decision to terminate the grant nor its deadline for the University to regain accreditation were arbitrary and capricious. Accordingly, the Plaintiff's motion will be denied and the Defendants' cross-motion for summary judgement will be granted.

## I.

In early 2013, the DOL published notice of a coming award of funds under the Trade Adjustment Assistance Community College and Career Training grant program. J.A. at 1, ECF No. 28-1.[1] The statute authorizing the grant program, 19 U.S.C. § 2371, allows the DOL to award a grant to an "eligible institution," meaning "an institution of higher education (as defined in section 1002 of Title 20)." 19 U.S.C. §§ 2371(a)(1), (b)(1). As defined, an "institution of higher education" is an institution which "is accredited by a nationally recognized accrediting agency or association." 20 U.S.C. § 1002(a)(1) (cross-referencing to 20 U.S.C. § 1001(a)(5)).

Under this grant program, the DOL awarded the University a $2.75 million grant for a performance term between October 1, 2013, and September 30, 2017. J.A. at 11. The award notification specified that the University must "fully comply with the following regulations" including "29 C.F.R. Part 95." *Id.* Under Part 95, the DOL has the authority to terminate a grant if "a recipient materially fails to comply with the terms and conditions of an award, whether stated in a Federal statute, regulation, assurance, application, or notice of award." 29 C.F.R. § 95.62(a)(3); *see also* 29 C.F.R. § 95.61(a)(1).

At the time the University received the grant, it was accredited by the Accrediting Council for Continuing Education and Training (the "Council"), a non-governmental organization. *See* Am. Compl. ¶ 17, ECF No. 31. On August 21, 2014, the Council revoked the

---

[1] All references to the administrative record uses the ECF pagination.

University's accreditation for "twelve (12) findings of non-compliance." J.A. at 36. The University internally appealed with the Council, which upheld the revocation on January 5, 2015. *Id.* The DOL subsequently sent an "Initial Determination" to the University by letter dated February 12, 2015. *Id.* at 43. The DOL's two findings and determinations were that (1) the University's accreditation was revoked by the Council and the University must "provide evidence that its accreditation has been reinstated" and (2) the University's certification to operate in Virginia was under review and may potentially be revoked. *Id.* at 46-47.

The University responded that (1) the Council had revoked its accreditation but that appeal of this revocation was pending before the Department of Education and (2) the revocation of certification to operate in Virginia had been overturned at a hearing. *Id.* at 48-49. On May 20, 2015, the Department of Education denied the University's appeal, stating that it "does not have the authority to reverse, revise, or vacate accrediting decisions or to direct an accrediting agency's decision." *Id.* at 66.

On September 1, 2015, the DOL suspended the University's grant through a "Final Determination" letter. *Id*. at 69. Although the lack of certification to operate in Virginia had been resolved, *id.* at 74-76, the lack of accreditation remained uncorrected. *Id.* at 72-74. The DOL, therefore, suspended the University's grant effective September 16, 2015. *Id*. at 69. Instead of immediately terminating the grant, however, the DOL set a deadline of January 1, 2016 for the University to regain accreditation and warned that if the University still lacked accreditation after that date, the grant would be terminated. *Id.* at 74.

In November 2015, the Middles States Association of Colleges and Schools Commission on Elementary and Secondary Schools ("MSA") accepted the University as a candidate for accreditation. *Id*. at 77. On December 15, 2015, as the January 1, 2016 deadline drew near,

3

MSA informed the DOL that the University was "on track for an early 2016 school visit." *Id.* at 80. If all went well with the visit, MSA intended to make the University's accreditation retroactive to December 1, 2015. *Id.*

On February 8, 2016, the DOL sent a termination notice to the University stating that "as of January 1, 2016, it is our finding that Security University remains unaccredited." *Id.* at 81. The DOL addressed the pending accreditation from MSA: "The possibility of retroactive accreditation, which has not even been yet approved or finalized, is not relevant to our determination. Security University remained unaccredited as of January 1, 2016." *Id.* The University quickly sought reconsideration of this decision. *Id.* at 83-85. While the reconsideration was pending, the University received an "Official Notice of Accreditation" from MSA beginning retroactively on December 1, 2015. *Id.* at 86. On March 1, 2016, the DOL denied the University's request for reconsideration, emphasizing again that "regardless of the retroactive accreditation," the fact remained that on January 1, 2016, the University was unaccredited and "not in compliance with the grant requirements." *Id.* at 89.

## II.

The Administrative Procedure Act ("APA") authorizes courts to review agency decisions. 5 U.S.C. § 702. A court's review is limited to the administrative record, and the court must determine if that record supports the agency's decision. *Coe v. McHugh*, 968 F. Supp. 2d 237, 239 (D.D.C. 2013). The court will grant summary judgment to the agency if the agency action is "supported by the administrative record and otherwise consistent with the APA standard of review." *Id.* at 240. On the other hand, if the agency decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," the court will grant summary judgment to the plaintiff. *See* 5 U.S.C. § 706. In resolving this question, the court asks whether "the

agency acted within the scope of its legal authority, whether the agency has explained its decision, whether the facts on which the agency purports to have relied have some basis in the record, and whether the agency considered the relevant factors." *Fulbright v. McHugh*, 67 F. Supp. 3d 81, 89 (D.D.C. 2014), *aff'd sub nom. Fulbright v. Murphy*, 650 F. App'x 3 (D.C. Cir. 2016).

### III.

### A.

The DOL terminated the University's grant because it failed to maintain accreditation throughout the term of the grant. J.A. at 82; *see also* 29 C.F.R. §§ 95.61, 95.62 (permitting DOL to suspend or terminate an award for material non-compliance with the terms and conditions of an award). In reviewing agency action, the Court begins with the governing statutes. *Chevron v. Nat. Def. Council,* 467 U.S. 837, 843 (1984). The statutes governing the DOL's authority to issue grants under the grant program are labyrinthine but ultimately unambiguous: the recipient of a grant must be accredited and this accreditation must be maintained throughout the life of the grant. *See* 19 U.S.C. § 2371(b)(1); 20 U.S.C. §§ 1001(a)(5), 1002(a)(1); 1 U.S.C. § 1. "If the intent of Congress is clear, that is the end of the matter." *Chevron*, 467 U.S. at 843.

The grant program is authorized by 19 U.S.C. § 2371, which provides that the "Secretary may award Community College and Career Training Grants to eligible institutions." 19 U.S.C. § 2371(a)(1). An eligible institution is an "institution of higher education (as defined in section 1002 of Title 20)." *Id.* at § 2371(b)(1). This cross-reference leads to the following: Section 1002 includes certain institutions described therein "*in addition to* the institutions covered by the definition in [S]ection 1001 of this title." 20 U.S.C. § 1002 (emphasis added). Section 1001, in

5

turn, defines "institution of higher education" as "an education institution in any State that *is* accredited." *Id.* at § 1001(a)(5) (emphasis added). Thus, an "eligible institution[]" for a grant must be an "institution of higher education" that "is accredited." The Dictionary Act makes clear that "words used in the present tense include the future as well as the present." 1 U.S.C. § 1. The "is" in "is accredited" is in the present tense, and by operation of the Dictionary Act, includes the future as well. It follows that "is accredited" requires a continuous state of being accredited which persists into the future, meaning here that the University must have maintained its accreditation throughout the term of the grant.[2] For Congress, all our yesterdays and tomorrows are today.

The University also argues that continuous accreditation was not a requirement of the grant because it was not specified in the grant announcement. *See* Pl.'s Mot. for Summ. J. 4. However, the University agreed to "fully comply with the following regulations," including "29 CFR Part 95," J.A at 11, which permits a grant officer to terminate an award if a "recipient materially fails to comply with the terms and conditions of an award," 29 C.F.R. § 95.61, or "suspend or terminate the current award" for "materially fail[ing] to comply with the terms and conditions of an award, whether stated in a Federal statute, regulation, assurance, application, or notice of award." 29 C.F.R. § 95.62. Clearly, disqualification as an eligible institution under 19 U.S.C. § 2371, as explained above, is a failure to comply with applicable federal statutes. The University's claim that the statutory requirement of continuous accreditation was not a term of the grant is not credible.

---

[2] The University insists that the Court should not defer to the DOL's interpretation of the definition of "eligible institution" because that definition comes from a statute governing the Department of Education. Pl.'s Opp. to Cross-Mot. for Summ. J. 8, ECF No. 40. The Court need not address this deference argument because the statutory language is unambiguous. *See Chevron*, 467 U.S. at 843.

Finally, the University argues that a requirement of continuous accreditation is inconsistent with the DOL's conduct during this dispute. The University claims that the DOL permitted the University "to remain unaccredited and continued funding for a number of months until [the DOL] improperly terminated the grant on February 8, 2016." Pl.'s Mot. for Summ. J. 10, ECF No. 35. The record and pleadings, however, evidences the contrary. The DOL suspended the University's grant effective September 16, 2015. J.A. at 69. The University itself seeks reimbursement for unpaid expenses from September 16, 2015 through the date of the Amended Complaint amounting to over $1.2 million. Am. Compl. ¶ 48. In any event, evidence of the DOL's clemency towards the University over a period of months does not undermine the Court's statutory interpretation.

**B.**

Given that the DOL acted within its authority to suspend and terminate the University's grant for remaining unaccredited by the set deadline, the question becomes whether the DOL acted arbitrarily and capriciously in setting a January 1, 2016 deadline for the University to regain accreditation.³ The deadline was not arbitrary and capricious: it gave the University nearly a year from the time the Council denied its appeal and over 16 months from the time the Council first revoked accreditation to cure its lack of accreditation. *See* J.A. at 36, 74. Although there is no set timeframe for determining what is or is not arbitrary and capricious, these timeframes are consistent with analogous circumstances. For example, the Department of

---

³ The DOL argues that the University waived this line of argument by not raising it during administrative proceedings. *See* Def.'s Cross-Mot. for Summ. J. 18-19, ECF No. 36; *see also Advocates for Highway and Auto Safety v. Fed. Motor Carrier Admin.*, 429 F.3d 1136, 1149-50 (D.C. Cir. 2005) (discussing the administrative waiver doctrine). I assume for the sake of argument that it was not waived.

7

Education may give an institution no more than one year to cure non-compliance with an accreditation requirement. *See* 34 C.F.R. § 602.20(a)(2)(i). While that regulation was not promulgated by the DOL, that timeframe is instructive and militates against the assertion that the deadline was arbitrary and capricious.

The University argues that an institution is barred from seeking accreditation from another accrediting agency for two years after losing its accreditation, and therefore, the shorter timeframe allowed by the DOL to regain accreditation was arbitrary and capricious. Pl.'s Mot. for Summ. J. 8 (citing 34 C.F.R. § 600.11(c)). This argument is unconvincing and bewildering. First, the University does not explain how this regulation—an Education regulation—applies to the circumstances at hand.[4] Second, the University's assertion is directly contradicted by the fact that it applied for, was evaluated, and received accreditation from MSA well within the two year period that it was supposedly barred from seeking accreditation from another entity. *See* J.A. at 36 (letter from the Council stating that the University's accreditation was revoked as of August 21, 2014), *id.* at 86 (letter from MSA dated February 19, 2016 notifying the University of accreditation). In addition, the record shows that the University applied to MSA for accreditation before November 17, 2015, further evidencing that the University's argument could not possibly be true. *See id*. at 77 (letter from MSA dated November 17, 2015 accepting the University as a candidate for accreditation).

Instead, the situation here is analogous to a scenario in which a police officer issues a warning to a driver operating a vehicle with an expired license. The driver is in violation of the

---

[4] Interestingly, although the University argues vehemently that there is no DOL statute providing for continuous accreditation and the Court should not focus on Department of Education statutes, Pl.'s Opp. to Cross-Mot. for Summ. J. 6, ECF No. 40, it relies here on a Department of Education regulation.

8

law, and the police officer is within his authority to issue a ticket for the violation. If the same officer stops the same driver the next day, and the day after that, but only issues a ticket to the driver on the fourth day, the driver can hardly complain that he was given insufficient time to cure his non-compliance with the law or that the officer's repeated warnings somehow call into question the legitimacy of the law, when the officer would have been fully justified in writing a ticket on the first instance.

Finally, the DOL did not act arbitrarily and capriciously in refusing to extend its deadline to accommodate the University's late accreditation, nor not to recognize *post hoc* the University's re-accreditation after the University's deadline for compliance had passed and after the DOL sent a termination notice. *See* Pl.'s Mot. for Summ. J. 9-13. The integrity of deadlines is consistently respected and strictly adhered to in the law. *See United States v. Locke*, 471 U.S. 84, 101 (1985) ("Filing deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced. . . . A filing deadline cannot be complied with, substantially or otherwise, by filing late—even by one day."); *Mountain Solutions, Ltd., v. FCC*, 197 F.3d 512, 513-14 (D.C. Cir. 1999); *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985); *Metro-Goldwyn-Mayer Studios, Inc. v. Peters*, 309 F. Supp. 2d 48, 61 (D.D.C. 2004).

As things stood on January 1, 2016, the University was unaccredited, it had been unaccredited for over a year, and it was uncertain if or when the University would regain accreditation. *See* J.A. at 81 ("Despite Security University's Candidacy status [to be accredited by MSA], as of January 1, 2016, Security University remains unaccredited. . . . The possibility of retroactive accreditation, which has not even been yet approved or finalized, is not relevant to

our determination, as [the University] remained unaccredited"); *see also IMS v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997) ("It is a widely accepted principle of administrative law that the courts base their review of an agency's decisions on the materials that were before the agency at the time its decision was made."). I cannot indulge the presumption that MSA's site visit was a mere formality, or that its accreditation process is so facile that the University's ultimate approval in February 2016 was inevitable in late 2015. *See* Compl. Ex. F (MSA's Director of Accreditation writing to the contract officer on December 15, 2015 that "[d]ue to the work involved with our self-study process, we are unable to solidify an accreditation decision by January 1, 2016"). Indeed, it may have been arbitrary and capricious for the agency to have extended its deadline indefinitely while awaiting the possibility of the University's re-accreditation. Def.'s Cross-Mot. for Summ J. 21; *see NetworkIP, LLC v. FCC*, 548 F.3d 116, 127-28 (D.C. Cir. 2008). Agencies must be reliable in their deadlines, as the DOL was here. *See Mountain Solutions*, 197 F.3d at 516-18.

Although the University's accreditation was later awarded and made retroactive to December 1, 2015, that does not change the state of events as they existed on January 1, 2016 or at the time the DOL sent a termination notice. On January 1, 2016, in the eyes of the agency and the law, the University remained unaccredited, and no subsequent event can change the record before the agency at that time. Last, contrary to the University's argument, that there was a delay by DOL in sending its notice of termination to the University cannot be interpreted as an extension of the deadline as the notice specifically referenced the January 1, 2016 deadline. J.A. at 81; *see* Pl.'s Opp. to Cross-Mot. for Summ. J. 13.

## IV.

For the foregoing reasons, the Plaintiff's motion for summary judgment will be denied, and the Defendants' cross-motion for summary judgment will be granted. A separate order will issue.

Dated: July 10, 2018

TREVOR N. MCFADDEN
United States District Judge